### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **BETTY JOANNE MARTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:15-cv-325-WTL-MPB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Betty Joanne Martin requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Martin applied for DIB and SSI benefits on April 3, 2012, alleging disability beginning on January 20, 2012. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an administrative law judge ("ALJ"). Martin was represented by counsel at the hearing, which was held on October 1, 2013, before ALJ Thomas A. Ciccolini. Martin and a vocational expert testified at the hearing. The ALJ rendered a decision denying Martin's claim on October 30, 2013. After the Appeals Counsel denied her request for review of the ALJ's decision, Martin filed this timely action for judicial review.

## II. **EVIDENCE OF RECORD**

The facts of the record, including the details of Martin's medical treatment, are set forth thoroughly in Martin's brief and need not be repeated here.  Facts directly relevant to the Court's analysis are discussed in context below.

## III. **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).[1]

At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month durational requirement; if so, the claimant is deemed

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to SSI sections only.

disabled.  20 C.F.R. § 416.920(a)(4)(iii).  At step four, if the claimant is able to perform her past

relevant work, she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At step five, if the claimant

can perform any other work in the national economy, she is not disabled.  20 C.F.R. §

416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be

upheld by this court "so long as substantial evidence supports them and no error of law

occurred."  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that

of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The ALJ is required to

articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific

evidence of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  In order to be

affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not

required to address every piece of evidence or testimony," he must "provide some glimpse into

[his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his]

conclusion."  *Dixon*, 270 F.3d at 1176.

## IV.  <u>THE ALJ'S DECISION</u>

The ALJ at step one found that Martin had not engaged in substantial gainful activity

since January 20, 2012, her alleged onset date.  At step two, the ALJ found that Martin had the

severe impairments of affective disorder, anxiety, and supraventricular tachycardia.  The ALJ

also concluded that Martin has the following non-severe impairments: obesity, restless leg

syndrome, conduction disorder, obstructive sleep apnea, and diabetes mellitus.  At step three, the

ALJ concluded that Martin's combination of impairments did not meet or medically equal any of

the Listings.  At step four, the ALJ concluded that Martin retained the following Residual

Functional Capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can have no exposure to unprotected heights, moving machinery, or hazards. She can do no complex tasks, complex being defined as involving arbitration, mediation, negotiation, or detailed math or reading. The claimant is limited to simple, repetitive tasks, and she is limited to low stress work, with no high production pace. The claimant can have minimal interaction with the public, co-workers, and supervisors.

Record at 23.  Given this RFC, the ALJ concluded that Martin could not perform her past

relevant work.  Finally, at step five, the ALJ concluded that, given Martin's age,

education, work experience, and RFC, there were jobs that existed in significant numbers

in the national economy that she could perform, including sorter, inspector, and packager.

Accordingly, the ALJ concluded that Martin was not disabled within the meaning of the

Act.

## V.  DISCUSSION

Martin argues that the ALJ failed to give appropriate weight to the opinions of her

treating psychiatrist and therapist in arriving at his RFC and erred in giving more weight to the

opinion of the state psychologists.

On July 19, 2012, psychologist Michele Koselke conducted a consultative psychological

examination on behalf of the state agency.  Dr. Koselke diagnosed Martin with adjustment

disorder with mixed anxiety and depressed mood as well as panic attacks.  The ALJ afforded

"weight" to Dr. Koselke's opinion, noting that she "derived her conclusions from the signs and

findings of the exam" and that "the medical record suggests that while the claimant had ongoing

social and concentration problems, she retained the ability to interact with others appropriately

4

and perform unskilled work tasks." R. at 26.   The ALJ does not point to any specific medical

evidence in support of this statement, however.

On August 16, 2012, Dr. Kari Kennedy, Pys.D., reviewed Martin's records and

completed a mental residual functional capacity assessment form in which she found no

significant mental limitations except moderate limitations in the ability to maintain attention and

concentration for extended periods, the ability to interact appropriately with the general public,

and the ability to respond appropriately to changes in the work setting.  Dr. Kennedy explained

her conclusions as follows:

> 40yo alleges physical, anxiety, depression, panic.  IE at initial level as clmt did
> not want to pursue claim.
>
> CE: no psych hospitalizations, meds rx by PCP.  Clmt cooperative and friendly,
> speech wnl, good eye contact, TP/TC wnl.  Fair attention/concentration, good
> short-term memory.  Dx: adjustment do with depressed mood and anxiety.  GAF
> 62 suggestive of mild sxs/limitations and is given weight.
>
> MER:  Cummins MHC records indicate clmt initiated oupx mh services 9/14/11
> and last attended 1/16/12.  Clmt dropped out of tx.  Dx:  Anxiety due to GMC;
> R/O MDD, single, moderate; PTSD; Panic with agoraphobia.  Records indicate no
> problems with panic or anxiety prior to being dx with physical condition.  Clmt
> attended appts alone.  Clmt was improved when clmt dropped out.
>
> Most recent PCP progress note 9/6/11 indicates anxiety is better, mood is okay
> but stress due to son, judgment/insight intact, oriented, memory intact,
> mood/affect appropriate.  Dx:  anxiety nos, panic attacks improved.
>
> ADLs: clmt lives with BF and his child, able to care for ph but may not (not
> supported by MER), prepares simple meals on occasion, completes hh tasks with
> some physical limitations, can manage finances, watches tv/reads/listens to
> music/talks on phone, gets along with authority figures, can handle changes in
> routine.
>
> Clmt not engaged in mh counseling, there are no apparent periods of
> decompensation, meds are rx by PCP, clmt and 3P report alleged limitations in
> ADLs that do not appear to be supported by reports to PCP. While clmt's sxs may
> result in some impediment in work settings with large numbers of people, clmt
> appears able to handle work settings with fewer others.

> The totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of unskilled work; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in routine work setting.  Clmt may prefer to work in a position that requires minimal interaction with others.  Clmt appears capable of unskilled work.

R. at 477.  The ALJ gave Dr. Kennedy's opinion "great weight," noting that she "based her opinion on the signs and findings in the record," that "the balance of the evidence supports Dr. Kennedy's assessment," and that "[a]lthough the claimant had ongoing anxiety symptoms, she generally retained cooperative behavior and intact cognitive functioning, suggesting she retained the ability to perform unskilled work in the restricted environment Dr. Kennedy described."  *Id.* at 26.

The ALJ does not acknowledge, however, that Dr. Kennedy did not have the benefit of the entire record when she rendered her opinion.  In fact, the only information Dr. Kennedy had that post-dated Martin's alleged onset date was the consultative examiner's report.  Thus, Dr. Kennedy was not aware that on September 11, 2012, Martin returned to mental health treatment at Cummins Behavioral Health.  The record from that visit indicates that Martin "is coming back to therapy now because she is able to afford services through the use of the sliding scale fee schedule."  *Id.* at 545.  Thus, while Dr. Kennedy suggests that Martin simply quit going to mental health therapy, perhaps implying she did so because she felt she no longer needed it, the record indicates that she stopped her treatment because she could not afford it and then returned when she found a way to do so.

The new mental health records indicate that Martin was diagnosed with panic disorder with agoraphobia, dysthymic disorder, and post-traumatic stress disorder. She was assessed a GAF of 44.  Martin began regular individual therapy and also was seen regularly by a

6

psychiatrist for a review of her medications.  The record contains mental health therapy records dated September 11, 2012, through June 17, 2013, none of which were available to Dr. Kennedy when she completed her review.

On May 29, 2013, Melissa Bush, LMHC, of Cummins Behavioral Health, who was Martin's mental health provider, completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)."  The form was countersigned by psychiatrist Steven Fekete, M.D., on June 10, 2013.  Bush opined that Martin's abilities in the following areas were "poor":  dealing with the public; dealing with work stresses; understanding, remembering and carrying out complex job instructions; behaving in an emotionally stable manner; and relating predictably in social situations.  She made the following observations:

> Consumer has difficulty in settings involving a lot of people. Consumer has uncontrollable crying and panic attacks.  Consumer's symptoms of anxiety increase under stress and in settings that are novel.
>
> History of special education services for reading comprehension.  Consumer is diagnosed with depression and anxiety and indicates poor attention, concentration and memory.
>
> Consumer has a fear of driving and social settings. She fears being around other people and has panic attacks and uncontrolled crying.  Consumer also shakes uncontrollably and becomes overwhelmed under stress.
>
> Consumer unable to transport herself to work due to extreme anxiety/fear of driving.  Public transportation (bus) is an issue due to panic attacks.  Consumer avoids cab due to PTSD and abuse history.

*Id.* at 479, 480, 481.  Bush opined that Martin could not sustain work-related abilities for a typical 40-hour work week, noting that she had "attempted a job at Dollar General and was unable to maintain part-time employment a couple days a week for 2 weeks."  *Id.* at 481.  The ALJ afforded "some weight to the assessments of Ms. Bush and Dr. Fekete," noting:

> As treating sources, they had some insight in to the claimant's conditions and associated restrictions.  Indeed, the claimant required a limitation to simple tasks

in a relatively low stress environment with minimal contact with others. However, such limitations do not preclude all work, contrary to the suggestions of Ms. Bush and Dr. Fekete.  While the record indicates that the claimant could not return to any of her previous jobs, such fact cannot be extrapolated to assert that she could not perform any jobs on a sustained basis.

*Id.* at 27.

The ALJ credited the opinion of Dr. Kennedy, the state reviewing psychologist, regarding Martin's mental impairments and their effect on her ability to work over that of Martin's treating therapist and psychiatrist.[2]  A treating physician's medical assessment is "entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence on the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)).  Here, the ALJ failed to provide the requisite "good reason" for crediting the non-examining psychologist's opinion over that of Martin's treating mental health care providers.  This error is compounded by the fact that the state psychologist did not have the benefit of the treating mental health care providers' treatment records when she made her assessment.  A reviewing expert's opinion is only as good as the records she has to review, and in this case those records were incomplete.  *Cf. Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[T]he ALJ would be hard-pressed to justify casting aside [the treating psychiatrist's] opinion in favor of these earlier state agency opinions . . . [because] the state-agency opinions were two years old.").

---

[2]It is not clear what weight the ALJ gave to the examining state psychologist, Dr. Koselke, as he states only that he gave her opinion "weight."  R. at 26.

Here, the ALJ did not adequately explain his reasons for giving less than controlling weight to the opinions of Martin's treating therapist and psychiatrist.  Further, if an ALJ decides not to afford a treating physician's opinion controlling weight, he "must provide an account of what value the treating physician's opinion merits." *Jelinek*, 662 F.3d at 811. In this analysis, an ALJ must consider the following factors:  "length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson*, 615 F.3d at 751.  The ALJ failed to address these factors in his decision.

This case must be remanded for the ALJ properly to consider and explain the weight to be attributed to the medical opinions of record and any updated opinions that are obtained.  As this necessarily will require a reassessment of Martin's RFC and the step 5 determination, the Court need not address Martin's remaining arguments.

## V.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 9/27/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

9